**LESLIE SALT CO., a Delaware corporation,**

v.

**UNITED STATES of America; John O. Marsh, et al.**

**UNITED STATES of America,**

v.

**LESLIE SALT CO., a Delaware corporation; Cargill Inc., a Delaware corporation.**

**Nos. C–85–8615–CAL and C–86–4187–CAL.**

United States District Court, N.D. California.

Jan. 6, 1992.

Order Regarding Remedies July 22, 1992.

Edward S. Washburn, Washburn Briscoe & McCarthy, San Francisco, CA, E. Clement Shute, Jr., Alletta d'A. Belin, W. Robert Ward, Jr., Tamara S. Galanter, Shute Mihaly & Weinberger, Santa Fe, NM, for intervenor Save San Francisco Bay Assoc.

Francis Boone, Asst. U.S. Atty., San Francisco, CA, Scott A. Schachter, Environmental Defense Section, Lands & Natural Resources Div., E. Clement Shute, Jr., Shute Mihaly & Weinberger, Washington, DC, for intervenor-defendant The Nat. Audubon Soc.

## ORDER FOR JUDGMENT

LEGGE, District Judge.

These consolidated cases are before this court on remand from the United States Court of Appeals for the Ninth Circuit. *Leslie Salt Co. v. United States,* 896 F.2d 354 (9th Cir.1990) *cert. denied,* 498 U.S. 1126, 111 S.Ct. 1089, 112 L.Ed.2d 1194 (1991). This court was directed to make two determinations on remand. One is whether the former salt crystallizers and calcium chloride pits on the property have a sufficient connection with interstate commerce to be under the jurisdiction of the Clean Water Act as "other waters" of the United States. *Id.* at 360. Second, the appellate court determined that some of Leslie's property met the standards for jurisdiction under the Clean Water Act. But because that jurisdiction did not extend to all of the property, the Ninth Circuit remanded for a determination by this court of the portions of property which are subject to the jurisdiction of the act. *Id.* at 360–61.

### I.

After remand, the parties agreed that these decisions would be made based upon the transcript of the first trial, together with certain additional briefs and exhibits, without the necessity for additional testimony. The parties then filed designations of the exhibits, the transcript references which they believed

to be relevant and material, further briefs, and maps of the property showing their contentions about the extent of jurisdiction. They agreed that some portions of the property were within or without Clean Water Act jurisdiction, but some remained disputed. Oral argument was held and the case was submitted for decision.

## II.

This court has reviewed the opinion of the Ninth Circuit, the transcript of the first trial, the exhibits designated by the parties, the briefs of the parties, and the maps submitted by the parties. This order, together with the map which has been drawn by the court and is attached to this order, constitutes the findings of fact and conclusions of law of this court pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. The findings are made by a preponderance of the evidence.

The maps submitted by the parties contain irregular shapes, and can only be compared with one another by the use of overlays. The portions of the property cannot be described verbally, either by reference to plot numbers, acreage or metes and bounds. Visual rather than verbal delineations are therefore necessary. For that reason, this court's decisions as to the portions of Leslie's property that are subject to Clean Water Act jurisdiction are delineated on the attached map.

## III.

■ Decisions regarding the extent of "other waters" of the United States require a two-step process.

First, the court must determine the areas that are ponded. The Ninth Circuit said that, "The Corps' determination that the crystallizers and calcium chloride pits are . . . seasonal bodies of water within the meaning of the regulations is proper." *Leslie Salt Co.,* 896 F.2d at 360. However, the crystallizers are large geographic bodies, and the Court of Appeals did not state or imply that because seasonal waters must be considered, the entire crystallizers must be included. Indeed, the whole point of the remand was for this court to determine the portions of the property over which the Corps had jurisdic-

tion in view of the circuit's legal conclusions. *Id.* at 361. And on remand the Corps does not contend that all of the crystallizers are subject to jurisdiction. This court's responsibility is to accept that seasonal waters meet the jurisdictional requirement, but nevertheless to determine where those seasonal waters are.

The second step is to determine whether those areas have a sufficient tie to interstate commerce, because of their use as a habitat by migratory birds or other endangered species. *Id.* at 360. On remand, Leslie made certain concessions regarding which areas were ponded, primarily in the calcium chloride pits, but did not concede that those areas were "other waters."

This court has delineated on the map attached to this order the areas of the crystallizers and calcium chloride pits which it concludes meet the Ninth Circuit's test of "seasonal bodies of water." And this court finds that based upon the evidence presented, those areas have a connection to interstate commerce as defined in 51 C.F.R. §§ 41206, 41217 (1990). That evidence need not be discussed in this order, but is summarized in the United States' Memorandum on Remand, filed June 28, 1991, pp. 22–24.

## IV.

This court's findings regarding the portions of the property that are subject to the jurisdiction of the Clean Water Act as being "wetlands" are marked on the attached map.

A few comments are necessary. Leslie concedes that the area identified as Zone "P" is a wetland. And the court finds that certain other areas are wetlands. But the court finds that certain areas on the map submitted by the Corps are not wetlands. These findings are based on the evidence of the extent of water, the soil hydrology and the nature and extent of the vegetation. These factors were discussed in *Leslie Salt Co.,* 700 F.Supp. at 486–89, and need not be repeated here.

## V.

Having determined the extent of the jurisdiction of the Clean Water Act over Leslie's

property, this court next turns to the issues of Leslie's alleged violations of that act.

### A.

■ The Corps also argues that Leslie violated the Rivers and Harbors Act at point "B" on the map. However, that argument is contrary to the record and the law of this case. After the first trial, this court found that Leslie did not violate the Rivers and Harbors Act; *Leslie Salt Co. v. United States,* 700 F.Supp. 476, 482 (N.D.Cal.1988), *rev'd on other grounds,* 896 F.2d 354 (9th Cir.1990), *cert. denied,* 498 U.S. 1126, 111 S.Ct. 1089, 112 L.Ed.2d 1194 (1991). The Court of Appeals did not upset, or indeed directly discuss, that finding. Instead, the Court of Appeals remanded the case to this court for a determination of jurisdiction under the Clean Water Act, *Leslie Salt Co.,* 896 F.2d at 360–61. The court therefore declares that Leslie is not in violation of the Rivers and Harbors Act at point "B."

### B.

■ The Corps contends that Leslie violated the Clean Water Act by the construction of ditches and the movement of fill at points designated as "A" on the map. Those actions occurred in October of 1985, and consisted of the construction of feeder ditches and basins. The court has found on the map that two of the area "A's" which the court has marked "A1" and "A2," are subject to Clean Water Act jurisdiction. The court finds that Leslie's activities at those points were violations of section 301(a) of the Clean Water Act. Leslie discharged "fill" in those areas which are now found to be subject to the jurisdiction of the Act. "Fill" is a defined pollutant. And Leslie did so without obtaining a permit as required by section 404 of the Act.

### C.

■ The Corps contends that Leslie violated the Clean Water Act in December of 1986 at point "B" on the map. It is undisputed that Leslie attempted to block a culvert at that point and did so without a permit. This court has determined that that area is subject to the jurisdiction of the Clean Water Act. And the Ninth Circuit has already determined that this area is connected to the Newark Slough. *Leslie Salt Co.,* 896 F.2d at 358–59. Leslie's activities on the "water" side of the culvert are within the prohibitions of the act.

Leslie contends that its placement of plywood and sandbags to stop the flow of water in that culvert was exempt from the permit requirements of the Act. The claimed exemptions are found in the Clean Water Act, Sections 404(f)(1)(B), (C); 33 C.F.R. § 323.-4(a)(2) (1990). These exemptions allow the maintenance of existing structures and the maintenance of drainage ditches. The Ninth Circuit has held that such exemptions are to be narrowly construed. *United States v. Akers,* 785 F.2d 814, 819, 823 (9th Cir.1986). The court finds that the activities of Leslie in blocking the flow of water through the culvert was not the maintenance of an existing structure or the maintenance of a drainage ditch. And even if those activities were initially exempt, the "recapture" provision of the Clean Water Act would preclude these defenses. Section 404(f)(2) of the Act precludes the exemption of those activities which bring about a "change in use." A change in use would occur when a section 404 wetland is converted to a non-wetland. 33 C.F.R. § 323(4)(C) (1990). The areas onto which the water flowed have now been delineated as wetlands. The purpose of blocking the culvert was to prevent the flow of water onto that wetland. That would bring about a change and would be subject to jurisdiction.

### D.

■ In 1988 Leslie constructed a large bulkhead on the bird refuge side of point "C" on the map. This included a concrete bulkhead and a tide gate, designed to control the flow of water through the culvert onto Leslie's property. The area onto which the water flows is designated as area "P" on the map, and is an area which Leslie concedes is within the jurisdiction of the act.

The activity occurred in 1988, after this court entered the judgment in the first trial. This issue was not then submitted to this court for decision, and of course no decision

was made by the Court of Appeals. The government seeks to amend its complaint to include this alleged violation, and at oral argument Leslie consented to allow it to be considered.

Leslie concedes that its activity occurred in jurisdictional wetlands. But Leslie argues that (1) it was the replacement of a prior tide gate, and was hence exempt from jurisdiction and the Corps' regulations, and (2) that the construction was not a prohibited discharge. The Corps objected to consideration of these defenses. But since the events are subsequent to the original judgment, and the alleged violation is to be considered, Leslie's defenses should also be considered on the merits.

However, this court finds against Leslie on the merits of these defenses. This activity was the construction of a new tide gate south of the culvert, and not the maintenance of the existing tide gate north of the culvert. A new area was affected by Leslie's construction work. And further, the recapture provision discussed above precludes the exemption defenses. *Akers,* 785 F.2d at 822. The court also finds that the installation of the tide gate was the placement of a pollutant. The sidecasting and redeposit of excavated wetlands, and the pouring of concrete, would constitute the discharge of a pollutant. 33 U.S.C. § 1362(6) (1990). The court therefore concludes that Leslie violated the Clean Water Act at point "C."

## VI.

This court therefore finds, concludes, and declares as follows:

1. Those portions of Leslie's property marked on the attached map are subject to the jurisdiction of the Clean Water Act, and no other portions of the property are subject to the jurisdiction of that act.

2. The Rivers and Harbors Act does not apply to the property, and Leslie did not in violate the Rivers and Harbors Act.

3. Leslie violated the Clean Water Act at the points marked "A1" and "A2" on the map.

4. Leslie violated the Clean Water Act at point "B."

5. Leslie violated the Clean Water Act at point "C."

6. The court vacates it January 4, 1989 award of costs to Leslie. Costs will not be awarded to either side. Although the Corps has now established jurisdiction over certain portions of Leslie's land, it has not established jurisdiction over all of the property as it sought to do by the filing of this action.

7. A status conference will be held on February 7, 1992, at 11:00 a.m. for the purpose of considering the further proceedings that are necessary, including remedies.

APPENDIX

ORDER REGARDING REMEDIES

On January 6, 1992 this court entered an order determining those portions of Leslie's property that are subject to the jurisdiction of the United States under the Clean Water Act; determining that Leslie had violated the Clean Water Act at certain points on the property; and directing further proceedings on the issues of remedies. The parties made motions on the issues of remedies, and the motions were submitted to the court for decision. The court has reviewed the motions, the records, the arguments of counsel, and the applicable authorities, and orders as follows:

1. Leslie asks that the court reconsider its decisions regarding certain violations. The requests for reconsideration are denied.

2. The motions present the issue of whether civil penalties under the Clean Water Act, 33 U.S.C. § 1319(d), *must* be imposed by this court, or whether this court has discretion to determine that *no* penalties should be assessed.

No Ninth Circuit case has decided this question. The Ninth Circuit cases cited to this court do discuss the subject of remedies, but have not decided the question of whether the civil penalties are mandatory. This court is persuaded by the decisions of two other

circuits, holding that penalties are mandatory. *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.,* 897 F.2d 1128 (11th Cir.1990) at 1142; and *Stoddard v. Western Carolina Regional Sewer Authority,* 784 F.2d 1200 (4th Cir.1986) at 1208–9. These decisions are also consistent with the mandatory language of the statute.

3. The statute nevertheless vests wide discretion in this court in setting the *amount* of the penalties. The statute enumerates certain things to be considered, and adds "such other matters as justice may require." This court may ultimately conclude that some or all of the violations call for only minimal penalties. But that issue will unfortunately require another round of proceedings. This court has not considered the arguments regarding the alleged seriousness of the violations and the extenuating or mitigating circumstances. Those matters will be addressed when the United States makes an appropriate motion for specific penalties. The United States should file its motion by August 31, 1992.

4. The United States has directed some discovery to Leslie on the issue of penalties. However, those discovery requests are extreme. We are dealing with property which has apparently undergone no development since this dispute arose. The vast majority of the property was held not to be subject to the jurisdiction of the Clean Water Act. And some of the evidence requested by the discovery was considered in the trial on the merits.

The court directs that when the United States files its motion for penalties, the United States also specify what discovery it believes is reasonable necessary. Leslie will then either supply that discovery or make its objections.

5. The United States is entitled to injunctive relief which restores the property at the points of violation to essentially their pre-existing condition. Leslie is to submit a plan to the Corps and to the court by August 31, 1992, which describes its proposed restorations.

6. The United States is also entitled to an injunction restraining future violations at those points where this court has found that there were violations of the Clean Water Act.

However, the United States is not entitled to an injunction that goes beyond that scope.

7. Leslie's request for an injunction against the United States is denied. While this court would like to see the disputes between the Corps and Leslie with respect to this property put to rest for all time, this court does not have the power to enjoin an agency of the United States from prospective exercise of its claimed jurisdiction. This court will certainly look with disfavor on any attempts by the Corps to relitigate issues and conditions which have already been resolved. But the court cannot preclude the Corps from attempting to exercise its jurisdiction in the future if the conditions or the law change.

IT IS SO ORDERED.